May it please the court, Nicholas Slowy for Petitioner Ramon Ramos-Jimenez. I would like to reserve my time for rebuttal. We are here because Mr. Ramos mistakenly hired two non-attorneys to handle his original Form I-140 petition. When those non-attorneys failed to properly document his employer's ability to pay, his original Form I-140 was eventually denied. A removal proceeding was then held, and Mr. Ramos was denied relief. It is only when Mr. Ramos contacted New Counsel that he learned the individuals previously representing him were non-attorneys. With the help of New Counsel, Mr. Ramos immediately filed a new Form I-140 petition, which has since been approved. The board committed two fundamental errors when it denied Mr. Ramos' release. First, it held that Mr. Ramos failed to show the necessary prejudice as a result of his previous counsel's ineffective assistance to counsel. Let me just ask you about this ineffective assistance of counsel claim. Now, we have this case called Ballum-Chuck, which says that these things that happen, filings and documentation and work that happens outside the course of the proceedings, can't be the basis for an ineffective assistance of counsel claim. Well, Your Honor, they were all wrapped up together. His previous counsel, Hispanic American Legal Services, he hired them to handle both his I-140 and his removal proceedings. So therefore, they're inherently tied together. But your claim is based on the improper filing of the I-140, right, that they didn't include the proof of the employer's ability to pay. And this case says that due process rights to assistance of counsel do not extend beyond the fairness of the hearing itself. And I didn't read your briefing as making any complaints about the hearing itself, just about these events that happened outside of the hearing. No. I think there is an aspect within the hearings that it is unfair, because he had bad counsel that should have known he could have documented his I-140, and they did not properly address that in any of the hearings. Mr. Schariri, the original attorney that represented him in the removal proceedings, was wrapped up in Hispanic American Legal Services and was inherently involved with that whole process. And in the record, the immigration judge stated that she would not hold removal proceedings while there was a pending I-140. So there's just an inherent tying of the two aspects of this case, the I-140 and the removal proceedings themselves. And it was the result of those hearings that he eventually faced a removal order that he's now, we're here today for. Mr. Stoi, Judge Gould with a question for you, please. Do I understand that your client now has an approved I-140? Yes, Your Honor. It was approved in January of this year, which we addressed in our Rule 28J letter. It would show that originally it would have been approved. So part of the government says it's okay, we welcome him to work here for his employer, and another part of the government, the BIA, says no, we're still going to keep him out. Yes, Your Honor. And that's our second problem with the board's decision, is that they said he had to have it approved in his hand before he was eligible to adjust, which is on its face wrong in line with the statute and prior board precedent. However, go ahead. You're on your roll. I'll go after you. Let me just ask about another issue that came up in the 28J letters. What do we do about the fact that the voluntary departure period expired? He didn't voluntarily depart. And either DOTED or the new regulation, 1240.26, would say that anything that your client did would automatically terminate the voluntary departure. What do we do about that? Well, the government, in its brief on page 27, said this needs to be remanded to the board. That's what they said in their brief. Now it appears that they've taken a separate position that says this is an independent decision for this court to make, which we disagree with. The board never reached this decision. And as we pointed out in our brief or in the Rule 28J letter, the issue of unilateral withdrawal was addressed by the Supreme Court in DOTA v. Mukasey. And we believe that the I-140 that he filed within the voluntary departure date is an act of unilateral withdrawal from that agreement with the government. In addition. But you're saying that in any event, that's a decision for the BIA to make. In any event, that's a decision for the BIA to make. And to expand on that a little bit, I mean, this came up last Friday in the letter. We've also found that the original order from the immigration judge granting voluntary departure stated that he could be excused based on exceptional circumstance. That's incorrect under the statute that was amended in 1996. On the record on page 136, the order says if there's exceptional circumstances, he could be excused. And the BIA addressed that in another case, matter of Zmejuska. Sorry. And that was looked at favorably towards the immigrant, that the immigration judge gave an improper notice about what would excuse voluntary departure. If, in fact, we consider that part of the information, which is in the motion to reconsider, which is that somehow the information that you're now presenting to the BIA would be of any relevance to the BIA in making that decision, wouldn't you agree with me that the evidence that's required by 8 CFR 204.5 G2 was not submitted to the BIA? I disagree. I mean, 8 CFR 204.5 G2 says that the prospective employer must demonstrate ability to pay, and then they say what need to be supplied. That was not supplied. Yes, Your Honor. So if, in fact, I'm dealing with now a standard review, which is substantial evidence, if you don't supply the information that the CFR suggests you ought to supply, how can I suggest there's not substantial evidence to affirm their decision? I don't think there is substantial evidence. There's record testimony. Did you supply the information? He supplied the application, the I-140, which showed the ---- Did you supply the information from 8 CFR 204.5 G2? You did not. So then how do I get around the substantial evidence standard? That's the question. But there's substantial evidence in the record that shows that he was entitled to show his ability to pay. The immigration judge's order found that he was earning $2,500 to $3,000 an hour. There was no question. They didn't say ---- Is that what 8 CFR says they should supply? But 8 CFR also says that there's other information that can be ---- Do you want me to read 8 CFR to you? I don't see that other information. Well, it says in appropriate cases additional evidence such as profit loss statements, bank account records or personnel records may be submitted by the petitioner or requested by the service. And that's exactly what he filed. He filed the bank account records. He filed a statement from the accountant for the company that said they could pay the proffered wage. And, in fact, now DHS has determined that they are able to pay the proffered wage at the time of the priority date, which is important because that's back in April of 2001. And I see I have a minute and 30 left. I'd like to reserve the remainder of my time. Good morning, Your Honors, and may it please the Court. My name is Catherine Clark, appearing on behalf of the Attorney General. As in Balam-Chuk, in this case, the petition relevant to adjustment of status was filed before proceedings began. Here the petition was filed prior in 2003, and proceedings did not begin until 2004. Let me ask you, though, I mean, the motion is determination on the motion to reconsider. The BIA, and also on the motion to reopen, the BIA says, well, there's not a prima facie case for eligibility because he shouldn't have filed the I-140. It wasn't approved at the time he filed the I-485. But we have these new regulations now that say under certain conditions it's okay to file both of them. You're allowed to file both of them concurrently. So why wasn't that an error for the BIA to base its determination on that point? Because the simple, with regard to the motion to reconsider, pardon, the simple ability to file those two applications at the same time was not, is not sufficient to show that an alien is prima facie eligible for adjustment. What was left out in his filing? What didn't he have that would have established a prima facie eligibility? And can we look at that, even though the BIA didn't expressly mention it? An approved I-140 would be necessary to show prima facie eligibility. So you're saying it's not enough to file it. Go ahead. You actually need to have it approved, as the BIA said. Right. Simply being able to file those two applications at the same time before the DHS and still have the DHS approve the petition does not mean that once you come, once an alien comes before the board with an adjustment application, that the alien can show eligibility just based on the filing of those applications at the same time before DHS. He had a priority number based, I mean, I think the labor certification was stale because it's valid only for 180 days. But in his briefing, at least, he's saying he had the labor certification, he had the priority date, the visa was immediately available. So what else specifically did he need to show to get the prima facie case for relief? He would have needed to show that he had the approved I-140. Ms. Clark, it's Judge Gould with a question for you, please. Yes. So he didn't have that approved I-40 when he first applied, right? That is correct. But didn't he get the approved I-140 later? And if so, then help me understand the practical side of this. That is, why shouldn't the BIA reopen his case when he demonstrates he's got the I-140? I'm sorry, I must be missing something here, but I can't understand the government's posture in this. Even if proceedings were remanded under this court's holding in Granada, the BIA would be required to deny adjustment at this point because petitioner is barred from adjustment as he overstayed his voluntary departure period. And there would therefore be no point to remanding, and to the extent that the government suggested otherwise in its brief, that is not correct, because the issue is that the voluntary departure bar, as a matter of law, prevents petitioner from adjusting his status based on the new I-140 approval. Also, the new I-140 approval does not represent a statement from the DHS that the petitioner, to clarify, I will say that Mr. Ramos, because he's not the I-140 petitioner, is welcome to come to the United States and work. That would be an approval of an adjustment application, which is a different matter from simply approving the I-140. Couldn't the BIA decide, though, if we remanded it, that in fact the filing of the I-140 operates the same as a motion to reopen or reconsider and automatically terminates the voluntary departure? Petitioner did not notify the Board of any filing of the I-140. But does that matter? I mean, the data seems to suggest and the regulations suggest that it's automatically terminated when the petitioner files a motion to reopen or reconsider. But the motion to reopen and reconsider in this case was filed well after. I know. But if the I-140 is analogous to a motion to reopen or reconsider, which I presume the BIA could decide it is analogous, wouldn't that just automatically terminate it? I mean, couldn't the BIA make that decision? Is it precluded from doing so? DADA does not address that exact situation because in DADA, the alien did file a request to withdraw voluntary departure before the BIA. So DADA does not provide Mr. Ramos here with any rights with respect to what his I-140 might do for him. But the question is, could the BIA make a decision beyond DADA? Because the regulations say that the agency has determined that the filing of a motion to reopen or reconsider automatically terminates the voluntary departure. Could the BIA or is the BIA statutorily precluded from extending their determination to include I-140s? Petitioner, because perhaps I would not want to speak as to whether the BIA could make that determination in another case where the issue was properly raised before them. But here petitioner had the opportunity to raise that issue before them in his motion to reopen or in his motion to reconsider as well. He did not say in either of those motions that I would like my I-140 filing to operate as a withdrawal of the request for voluntary departure. That is why remand would not be appropriate on that issue here because petitioner could have clarified his position on that issue before the board. Wouldn't the BIA still be free to take that position if it wanted to do so? I mean, it's just strictly a legal matter. The issue that Judge Ikuda raised, it's solely a matter of law and I don't see any prejudice. What's the prejudice if the BIA wanted to consider that? It's simply that the question is not whether the BIA could consider, my response is not directed toward whether the board could consider that if it were properly raised to them in another case. It simply has not been properly raised to them here when there was an opportunity for Mr. Ramos to properly raise it. Well, maybe it wasn't properly raised, but can't the BIA consider it nonetheless if it wants? You're not saying they can't consider it in an appropriate case when someone did things right, but even if he did it wrong procedurally, why don't they still have power to consider it? Because there's a statutory exhaustion requirement. Of course, they could reopen Sua Sponte. However, they have demonstrated that if Petitioner, for example, filed a request that they do so, but there's no indication in their case's database that he has filed such a motion at this point. Could I just, getting back to the question whether the BIA erred or not, if I could just, you said they need an approved I-140 to establish prima facie eligibility for relief that Mr. Ramos does. What's the basis for that? Is it a regulation case, and could you point me to that? Of course, just one moment. The relevant cases on that issue would be the board's decision in matter of Raja and matter of Hashmi, and also the regulations which require the petition to be, the visa number to be immediately available. Well, the immediate availability doesn't relate to having an approved I-140. That relates to the priority date. I mean, Raja seems to say, I haven't read the other case you mentioned, but Raja seems to say you need to file the, the I-140 has to be approved before you can file the I-485, which is contrary to the regulations. I don't know where the BIA was going on that one. What Raja was, Raja was directed primarily towards continuances, first of all, not towards motions to reopen, but additionally, Raja did hold that, that prima facie eligibility for an I-140 or for adjustment of status does not automatically mean that the ILAN should get a continuance. And even with regard to a continuance, that is when removal proceedings are currently pending, before they have ended and that interest in finality adheres. And the, in this case, if anything, there would be even more rationale for holding that prima facie eligibility for an I-140 does not constitute eligibility for adjustment of status, because the proceedings have ended here at the point that petitioner has presented his motion. And in any event, regardless of all of this, the board primary, the board, even if there had been error with respect to the need for an approved I-140, which of course the government does not concede, the board denied the motion for independent reasons as well. The board denied, and those were sufficient, and those reasons were the time bar and the number bar, or excuse me, the number bar and the bar on presenting motions to reopen without previously unavailable evidence. The only motion under review here, the only board decision under review here is the denial of the motion to reconsider. And that motion, which was also a motion to reopen, because it was submitted with additional evidence. The board denied that motion, insofar as it was a motion to reopen, because the evidence was previously available. For example, the... You're over time now, so let me see if anyone has further questions. Judge Gold? I'd like to hear the end of what counsel is saying on this line about why they denied that motion. And also I'd like counsel to address, was the motion to reconsider, as opposed to denying in part, construing it as a motion to reopen, but just construing it as it said it was a motion to reconsider, or for that part of it, what was the basis for denying it? Of course, Your Honor. With respect to that second question, just one point. On page 7 of the administrative record, the motion is captioned as a motion to reconsider, motion to reopen, remand, stay of deportation. And therefore, even if, although it is appropriate for the court to look to the substance of the motion and the fact that new evidence was offered along with it in order to determine what type of motion it is. When it offered the new evidence, didn't it ask for reconsideration and then say, alternatively, we move to reopen with the new evidence? Indeed. Isn't there a part of the motion that just says you've made an error of law and reconsider? The motion alleges both an error and presents new evidence. But as it regards the evidence, it was not previously unavailable. And then that goes back to Your Honor's first point. The accountant letter from J.H.A. was drafted on and signed on April 10th, 2007. The employer's bank letter was issued on April 11th, 2007. The motion to reconsider, that was well before the first motion to reopen was filed. Then the motion to reconsider presented those documents. The first motion to reopen was filed on June 4th, and those documents were ready in mid-April. There's no explanation as to why they were not offered with the first motion to reopen. And also the motion to reopen, as a motion to reopen, the second motion was time barred. I'm sorry, it was number barred. But the motion to reconsider was not barred. Even so, it was denied in addition to the failure to show prejudice. It was denied for failure to show prima facie eligibility. And Petitioner is still not prima facie eligible for relief. And therefore, any error with respect to prejudice, which of course the government does not concede, was harmless. Because Petitioner is still prima facie ineligible for relief. He was prima facie ineligible at the time. And why is he now? Because of the voluntary departure bar. Anything else? Thank you. No, thank you. Thank you. Your Honor, I'd like to address two points. First of all, the Board can absolutely take into consideration the fact that he filed his I-140 form within the voluntary departure period to determine that he unilaterally withdrew from voluntary departure. DOTA does not address what is needed to unilaterally withdraw. And in fact, this Court has remanded a case last year, Navarrez-Navarrez v. Holder, for the Board to address what happens, especially in this circuit where a motion to reopen automatically told the period for voluntary departure. Secondly, or in addition to that, Granados is not applicable to this case because the Board in that case had already determined that the immigrant had stayed beyond the voluntary departure date. So even remanding the case in that situation back to the Board, the Board couldn't do anything because they had already determined that he overstayed. In this case, this has never been raised. The DHS had never filed an opposition motion below, and the Board never addressed it. So raising the issue of voluntary departure himself was completely inapplicable in this case. Second, prima facie eligibility is determined by the filing of an I-140 with an immediately available visa and a priority date that's immediately available. But what about this labor certification issue, that it expires after 180 days? And I didn't see in your briefing or in the record that there was another one that had been filed or approved. I am not aware of what the situation with that is, but the DHS has approved the I-140, and if there's a stale labor certificate, I don't believe that they would approve it. They can approve it, it just doesn't give you the immediately available visa. So you're not aware of another labor certification being filed, is that correct? I am not, but I can absolutely track that down and file that with this court if that's necessary. But in addition- I think the issue is what was before the BIA when it made its determination of not prima facie eligibility, and even though the labor certification wasn't raised, I guess you could say if they decided it wasn't prima facie eligible, any error was harmless. That's my concern. The Board never addressed that below. They never said because you have a stale labor certificate. They never made that determination. There has been no evidence in the record that it's stale. The regulations say it's 180 days, but I don't know if there was a second one that was issued or it was reissued. But the fact is the Board never raised that, and it's an issue for the Board to determine in the first instance. And if they think that the labor certificate might be old, they can inquire below and remake that decision if that's the case. And as the Board determined in Raja, they actually pointed to the 11th Circuit cases that we cite, Merchant and Haswani, that say there's a particular-it's almost like a spectrum of where the immigrant is on the scale, whether he's got an approved labor certificate, whether his priority date is in line, and whether a visa is immediately available. And those are to be considered. And the Board actually looks approvingly on the 11th Circuit's decision in that case, and the government in that case has specifically said that an approved I-140 visa petition is required to make prima facie eligibility. And the 11th Circuit and Merchant said that's absolutely not the case. But don't we go with the agency in this one under Brand X? I was confused by Raja saying that you need to have the approved I-140, given that the regulation seems to say you can file that with the I-485 at the same time. But the Board has also made the-in addition to that, there's the matter of Garcia and matter of Velarde Pacheco, that say a prima facie eligible immigrant should generally be granted a motion to reopen if he can show that his visa petition is immediate, if it can be approved and he can immediately adjust status, which is all that the statute requires, that if his visa petition has a current priority date and he's filed the adjustment of status application, then the Attorney General can immediately adjust. Now they have to wait until the I-140 is approved. But that's what determines prima facie eligibility. Okay. Any other? Thank you, Your Honor. Thanks to both of you for your arguments in this case. The case of Ramos-Jimenez v. Holder is submitted. And our next case is ConsumerInfo.com v. Money Management International.
judges: Gould, Ikuta, Smith N. R.